UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CR-0024-CVE |
| ) | (07-CV-0264-CVE-FHM) |
| ALFRED MELGAR, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

On May 4, 2007, defendant Alfred Melgar ("Melgar"),[1] a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 81). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

I.

On January 21, 2004, Oklahoma Highway Patrol Trooper Branson Perry ("Trooper Perry") pulled over a 2003 Ford Expedition, because the vehicle did not have a license plate. The driver of the vehicle was Jose Guadron ("Guadron"), and Melgar was seated in the rear passenger seat. Guadron explained to Trooper Perry that he had recently purchased the vehicle, and he was waiting

---

[1] Defendant was indicted as "Alfred Melgar aka Adelaida Melgar Blanco." Dkt. # 9. As described by the Tenth Circuit, defendant is a "mid-process female-to-male transsexual." United States v. Melgar, 164 Fed. Appx. 772, 776 (10th Cir. Jan. 26, 2006). Although defendant is currently incarcerated in the Dublin Federal Correctional Institution, a prison for women, defendant refers to herself in the masculine throughout her pleadings. The Court will also refer to defendant in the masculine in this Opinion and Order.

for a license plate to arrive in the mail. Trooper Perry informed Guadron that he would issue a warning citation for driving a vehicle without a license plate, and he asked Guadron to sit in the patrol car while he wrote the citation. While Trooper Perry was completing the warning citation, he asked Guadron questions about the ownership of the vehicle, and he determined that the vehicle belonged to Melgar. Trooper Perry thought that it was unusual for a new vehicle to have 16,000 miles, and Guadron's nervous responses to Trooper Perry's questions made him suspicious.

After Trooper Perry completed the warning citation, he approached the vehicle and asked Melgar to step out of the vehicle. Melgar complied, and Trooper Perry questioned Melgar about the purpose of his trip. Melgar stated that he was driving to New York to visit friends, and he told Trooper Perry that the vehicle belonged to his sister. Trooper Perry returned to his patrol car, and requested a background check on Guardon and Melgar. He learned that Melgar had recently entered the United States, and Melgar had recently been involved in a traffic stop where $20,000 had been seized from the dashboard of a 2002 Ford Expedition. Trooper Perry concluded the initial stop and told Guadron that he was free to leave. While Guadron was exiting the patrol car, Trooper Perry asked Guadron if the vehicle contained any contraband. Guadron denied that the vehicle had any contraband and, after Trooper Perry requested to search the vehicle, Guadron consented to a search.

Trooper Perry approached the vehicle and asked Melgar to step outside a second time. He informed Melgar that Guadron had consented to a search of the vehicle, and he asked Melgar to sit in the patrol car during the search. Trooper Perry conducted a canine sniff search of the vehicle, and the dog alerted Trooper Perry to the presence of illegal drugs. Trooper Perry searched the gas tank and located 31 kilograms of cocaine. He immediately placed Melgar and Guadron under arrest, and

Melgar was subsequently charged with one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii).

Melgar pled not guilty to the charged offense, and his case proceeded to jury trial. The jury convicted Melgar of one count of possession of cocaine with intent to distribute, and the Court asked the jury to determine the quantity of drugs involved in the offense. The jury found that Melgar possessed more than 15 kilograms but less than 50 kilograms of cocaine. The presentence report states that the base offense level, considering the offense and the quantity of drugs, was 34 and Melgar did not have any criminal history points.[2] Based on an offense level of 34 and a criminal history category of I, the United States Sentencing Guidelines provided a sentencing range of 151 to 188 months.[3] The Court rejected the government's request to sentence Melgar at the high end of the guideline range, and sentenced Melgar to 151 months in prison and five years of supervised release. Judgment was entered on December 15, 2004, and Melgar appealed his conviction and sentence to the Tenth Circuit Court of Appeals.

After Melgar filed his appeal, the Supreme Court issued its decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), on January 12, 2005. The Supreme Court held that United States Sentencing Guidelines, if applied in a mandatory fashion, violated the Sixth Amendment of the United States Constitution, because the sentencing guidelines permitted a judge to enhance a

---

[2] The presentence report erroneously adjusted defendant's offense level to 31 based on an assumption that defendant would receive a three point reduction for acceptance of responsibility. However, defendant went to trial and he did not receive any reduction for acceptance of responsibility. At the sentencing hearing, defense counsel agreed that the total offense level should have been 34 instead of 31. Dkt. # 65, at 3.

[3] The base offense level of 34 was not enhanced or reduced in any way, and defendant's sentencing range was determined solely based on the base offense level provided by the United States Sentencing Guidelines.

3

defendant's sentence based on facts not "established by a plea of guilty or a jury verdict . . . or proved beyond a reasonable doubt." Id. at 244. Melgar did not raise constitutional Booker error on appeal, because he did not argue that the Court enhanced his sentence by considering additional facts found by a preponderance of the evidence only. Instead, he argued that the Court committed non-constitutional Booker error by applying the sentencing guidelines in a mandatory fashion. United States v. Melgar, 164 Fed. Appx. 772 (10th Cir. 2006).

The Tenth Circuit applied the plain error test, and found that two of the three prongs of the test were satisfied. Dkt. # 74, at 6-7. However, Melgar could not satisfy the third prong, because there was no evidence that the Court's application of the sentencing guidelines in a mandatory fashion actually prejudiced Melgar. The most important fact, the quantity of drugs, was found by a jury beyond a reasonable doubt, and Melgar's argument that the Court used the wrong drug quantity to determine his base offense level was meritless. The Tenth Circuit also rejected Melgar's argument that his status as a "mid-process, female-to-male transexual" justified a lesser sentence. Due to the lack of evidence demonstrating "a reasonable likelihood the district court would impose a lesser sentence under the post-*Booker* sentencing scheme," the Tenth Circuit affirmed Melgar's sentence. Id. at 9.

The Tenth Circuit issued its decision denying Melgar's appeal on January 26, 2006. Defendant's conviction became final on May 30, 2006 when the Supreme Court denied his petition for writ of certiorari. Clay v. United States, 537 U.S. 522, 527 (2003). Melgar filed his motion to vacate, set aside, or correct sentence pursuant to § 2255 on May 4, 2007. Therefore, Melgar's motion was filed within the one year statute of limitations provided by § 2255, and his motion is timely.

4

## II.

In his § 2255 motion, defendant challenges his conviction on the grounds that (1) his poor grasp of the English language prevented him from receiving a fair trial; (2) he did not understand the laws of the United States and, therefore, did not fully understand his rights; and (3) he was deprived of his constitutional rights. The Court has given defendant an opportunity to clarify his constitutional claims, because defendant's citation to the Bill of Rights did not adequately inform the government or the Court of what claims defendant intended to raise. The only clarification defendant has offered is a bare allegation that his rights under the First and Fourteenth Amendments of the United States Constitution were violated when the Court failed to consider all relevant information at the sentencing hearing. Dkt. # 90, at 2. However, he actually argues that the Court considered too much evidence at his sentencing hearing, and he does not identify any specific information that the Court failed to consider. He argues that a "so called civil forfeiture was used in counting points in the sentencing guideline scheme," and his attorney failed to object on this basis at the sentencing hearing. Id. In a final and unrelated argument, he states that the Court's reference to the superseding indictment was "inflammatory" and he implies that the Court used the existence of a superseding indictment to enhance his sentence. Id.

The government argues that defendant is procedurally barred from raising any of the claims stated in his § 2255 motion because they were not raised on direct appeal. "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th.Cir. 1994). Because defendant failed to raise the identified claims on direct appeal, they are procedurally barred unless defendant establishes cause for his default and prejudice resulting therefrom, or can show that a fundamental miscarriage

5

of justice will occur if his claims are not addressed. United States v. Cook, 45 F.3d 388, 392 (10th Cir.1995). The procedural default rules developed in the context of habeas corpus cases apply with equal force in § 2255 cases. United States v. Frady, 456 U.S. 152, 166-69 n. 15 (1982).

The "cause" standard requires a defendant to show that some objective factor external to the defense impeded his ability to raise an issue on direct appeal. See Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence or a change in the law. Id. Ineffective assistance of counsel is another example of an external factor that may constitute "cause" excusing a procedural default. Cook, 45 F.3d at 392. As for prejudice, a defendant must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). The "fundamental miscarriage of justice" exception requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In this case, defendant filed a direct appeal to the Tenth Circuit raising only the issue of non-constitutional Booker error. He did not raise any claims concerning his lack of understanding of the English language or the laws of the United States nor did he argue that he was deprived of any rights under the United States Constitution. The government raised the issue of procedural bar in its response to defendant's § 2255 motion, but defendant failed to file a reply or address this issue in his supplemental pleading. When the government raises a defense based on procedural bar in its response, the Court does not need to provide additional notice to defendant before finding that his claims are procedurally barred. United States v. Wiseman, 297 F.3d 975, 979 (10th Cir. 2002); United States v. Allen, 16 F.3d 377 (10th Cir. 1994). The Court has provided defendant an

opportunity to file a supplemental pleading, but he did not address the government's argument that his claims are procedural barred.

Defendant claims that he was deprived of his constitutional rights, because the Court considered improper evidence at his sentencing hearing. Implicit in this claim is an argument that counsel failed to raise certain issues at defendant's sentencing hearing. Specifically, he claims that his counsel failed to object to "so called civil forfeiture" that was used to enhance his sentence. Dkt. # 90, at 2. At the sentencing hearing, the government argued that defendant should receive a sentence at the high end of the guideline range because defendant had a previous encounter with law enforcement officers where approximately $20,000 in cash was seized from defendant's vehicle. This appears to be the factual basis for defendant's claim that the Court enhanced his sentence based on alleged civil forfeiture. Construing defendant's claim broadly, the Court will treat this claim as an ineffective assistance of counsel claim concerning defense counsel's failure to object at the sentencing hearing. Ineffective assistance of counsel claims are appropriately raised in a § 2255 motion, and this claim is not subject to a procedural bar. United States v. Porter, 405 F.3d 1136, 1144 (10th Cir. 2005).

The Sixth Amendment of the United States Constitution guarantees every person accused of a crime the right to have the assistance of counsel at any critical stage of a criminal proceeding. United States v. Gonzalez-Lopez, 126 S. Ct. 2557, 2561 (2006); Mickens v. Taylor, 535 U.S. 162, 166-67 (2002). In Strickland v. Washington, 466 U.S. 688 (1984), the Supreme Court established a two part test to determine if a criminal defendant has received ineffective assistance of counsel. See Rompilla v. Beard, 545 U.S. 374, 380 (2005); Wiggins v. Smith, 539 U.S. 510, 521 (2003). First, the defendant must show "that counsel's representation fell below an objective standard of

reasonableness." Strickland, 466 U.S. at 688. Second, "counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. The right to the effective assistance of counsel ensures fairness in the criminal process, but this right is not implicated "[a]bsent some effect of [the] challenged conduct on the reliability of the [judicial] process." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)). Courts should avoid reviewing attorney performance under the "distorting effects of hindsight" and must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Defendant argues that the Court considered cash seized in a separate incident as a basis to enhance his sentence in this case, and he argues that his attorney failed to raise an objection to a sentencing enhancement based on the Court's consideration of this evidence. The Court has reviewed the presentence report and the transcript of the sentencing hearing, and finds that there was no such enhancement. The government did discuss defendant's prior encounter with police, but the government used this to support its argument that defendant should be given a sentence at the high end of the guideline range. However, this conduct was not used to enhance defendant's sentence in terms of the offense level or a sentencing enhancement, and defense counsel had no basis to make the objection defendant has proposed.[4] The seizure of cash from defendant under similar circumstances to those under which he was arrested in this case is clearly relevant conduct under the United States Sentencing Guidelines, and it should have been considered by the Court. In addition,

---

[4] Defendant argues that his offense level was increased from 30 to 34 based on civil forfeiture allegations. The base offense level for defendant's offense was 34 and his total offense level was also 34. No guideline enhancements were used to increase defendant's sentence. Therefore, defense counsel could not have objected to a sentencing enhancement when none was considered or imposed.

8

the Court sentenced defendant to the low end of the guideline range and, to the extent defendant's prior conduct was considered, it did not increase his sentence. Therefore, defendant has not shown that defense counsel performed deficiently or that he suffered any prejudice from counsel's failure to object. Strickland, 466 U.S. at 689. Therefore, his ineffective assistance of counsel claim should be denied.

Defendant's excuse for failing to raise a claim on appeal concerning his lack of understanding of the laws of the United States or the English language is simply that he "lack[ed] knowledge of United States laws." Dkt. # 81, at 4. In essence, the merits of his claim also provide the basis for his argument to excuse the procedural bar. Defendant has not argued that counsel was ineffective for failing to raise this issue or that a fundamental miscarriage of justice will occur if these claims are not considered, and the government's response clearly put defendant on notice of the procedural bar defense. The Court concludes that defendants' claims are procedurally barred. Regardless of the procedural posture of defendant's claims, the Court finds they are patently without merit. Defendant's claim that he did not understand the English language or laws of the United States are not supported by the record. The Court has reviewed the transcript of the detention, suppression, trial and sentencing hearings, and finds no merit to defendant's argument that he did not understand the legal proceedings or the English language. Defendant was provided with counsel and an interpreter at every court hearing, and he never once notified that Court that he did not understand the proceedings. Dkt. # 62, 63, 64, 65. At the sentencing hearing, defendant responded to the Court's questions through an interpreter and, even if English is not his native language, he was able to fully participate in the sentencing hearing. Dkt. # 65. Defendant is not entitled to relief on

his claims that he did not understand English or the laws of the United States are procedurally barred.

Lastly, defendant argues that the Court's use of the term "superseding indictment" was inflammatory and incorrect. Dkt. # 90, at 2-3. Defendant was originally charged by indictment on February 5, 2004, and the grand jury returned a superseding indictment on August 11, 2004.[5] The Court's description of the indictment as superseding was correct, because the charging document for defendant's trial and sentencing was the superseding indictment. In any event, defendant has offered no support for his argument that the use of the term "superseding" is inherently inflammatory, and defendant is not be entitled to relief under § 2255.

**IT IS THEREFORE ORDERED** that defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. # 81) is **denied**. A separate judgment is entered herewith.

**DATED** this 1st day of February, 2008.

                                                                                    *Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] The indictment was amended to allege that defendant possessed with intent to distribute 31 kilograms of cocaine. The original indictment simply alleged that defendant possessed with intent to distribute more than 5 kilograms of cocaine but did not state a specific drug quantity.